Good morning, Your Honor. Christina Gabrielides on behalf of Mr. Rivera in this case. I'd like to reserve three minutes for rebuttal. In this case, at sentencing hearing, the district court stated, The court has some concerns about the competence of Mr. Rivera because he's facing a lengthy term of imprisonment. And I certainly wanted to make certain that we weren't putting a mentally incompetent person in prison. But that looks like exactly what happened in this case. Here, there was substantial evidence that Mr. Rivera was likely incompetent, yet no one moved for a competency hearing in this case. When? When? There was a lot of evidence before the district court that When? In other words, at the time of the plea or at the time of the sentencing? At the time of the sentencing. So you're claiming that it's the sentencing as to which you should have been in competency hearing? Well, absolutely, at the sentencing hearing. The district court should have, on its own motion, moved for a competency hearing because defense counsel just failed to do so. But defense counsel didn't go beyond failing to move for a competency hearing. Didn't defense counsel say, he's competent? Yeah, repeatedly. Permittively repeated it. If I could raise ineffective assistance of counsel on appeal directly, I would do so because he dropped the ball big time. How would you support that counsel if he actually had Dr. Fromming evaluate him and prepare a report on her evaluation? Because he had Dr. Fromming What's incompetent about that? Well, Dr. Fromming prepared the report, and the report was dated October of 2009. Two months later, he pled guilty, and the defense counsel at the sentencing hearing came to court and said, you know, I had this report from the psychologist, and it's been sitting on my desk for a year. I don't But the report itself doesn't find that he's incompetent to enter a knowing and voluntary plea, does it? He wasn't being assessed for competency at that time. Basically, she found borderline mental retardation, but that doesn't mean that he's not competent to enter a plea. Well, that should have been examined by the That wasn't a question that was put to Dr. Fromming, and that wasn't a question that was really considered by any party in this case, and it should have been because Wasn't it considered by his lawyer? The reason I ask the when question is this. At the time of the plea, none of this information was before the judge. Correct. So let's suppose there was information at the time of the sentencing. Then what? He should have held a competency hearing and then allowed him to withdraw the plea because it would have reflected on the time of the plea, although it was gathered later. Yes. Under 4241, a defendant or a court, any party in a court, can have a defendant assessed for competency at any time until that person is sentenced. Well, I understand they can do it at any time, but the question is does it operate retroactively, essentially? In other words, he had already pled. Correct. At the time of the plea, there was no such evidence. Right. Yes. Okay. So if he had done it later, then would have that result In order then to undermine the plea, you'd have to say you'd have to assume or conclude that he was incompetent at the time of the plea. Correct. But nobody asked to withdraw the plea. Right. There were a lot of errors that were committed by, I believe, all of the parties. Those would seem to be IAC issues. So in terms of if he had actually done this competency hearing at the time of the sentencing, could he have retroactively, without anybody asking for it, vacated the plea? I believe he could have. I believe that a district court would have had a duty to vacate the plea if he had a reason to believe that the defendant didn't have the mental competency to plead guilty at the time because evidence later made it known that he wasn't of the mental capacity to be able to understand the rights. Counsel, that's not what the report says. And the district judge specifically asked both counsel for the United States and for the defense if there was any reason why the proceeding to sentence him could not go forward. And both counsel, with this information before the court, said no. True. So what would a reasonable district judge do in the face of those assurances and an evaluation that has been done and memorialized in a written report that triggers a sua sponte obligation on the part of the district judge to order a 4241 evaluation? Well, the district court had concerns. The district court stated that it was concerned. There's a difference between the concerns, isn't there, as I read them in the record, that the district court had, which were concerns shared by counsel. Right. About the type of facility he would be designated to because he did have some limitations. So the district judge did have concerns, but the district judge had already gone through a really good Rule 11 colloquy when he accepted the plea, took considerable pains to ensure that the defendant understood and had an opportunity to respond in his own words to the questions that the district judge put, made sure that between counsel and the judge that there was a clear record basis for accepting the plea, which meant a finding of competence to enter it. How do we then find that at the time of sentencing things had changed when the lawyer's still saying he's competent? There are several errors in this case which would lead the district court at the time of sentencing to look back and say, you know, there was a mistake here, and we need to fix it before a person who's mentally incompetent gets sentenced to 150 months, 151 months in prison. The court did grant a continuance of the sentencing proceeding, did it not? Correct, yes. So that counsel could gather or present additional information, and there was no further information presented to the court that suggested he was not competent to be sentenced. Again, defense counsel totally dropped the ball, and I'd just like to... That's a separate question. Your argument is the district judge had a sua sponte obligation, and under our decision in Dorsey, I believe it is, there must be a sufficient amount of evidence so that no reasonable district judge would have proceeded without ordering a competency evaluation. And I want to ask again, what evidence was before the court that triggered that obligation? At the time of sentencing, the October 2009 psychological report saying that Mr. Rivera had mental retardation, that he was possibly in the 0.5 percentile of mental capacity. The letter from his aunt Floor, which indicated that he's been retarded all of his life, and he couldn't understand the most simple of tasks. Well, can I ask a question just on that point? Didn't the district judge also have before him information about the type of business that the defendant ran? He had his own business. He fixed cars. Right. He also had evidence that the defendant had been involved in at least two transactions, selling drugs in which there had been some communications about bumping up prices and a competitive marketplace. And then there was, in addition, putting aside the tape recording in the back of the car because that there's, I agree, some evidence of confusion about that. But putting that totally aside, there was also statements made by defense counsel of statements made by his client to the AUSA, indicating significant knowledge and understanding. So how do you square all of that with this notion that the district judge had enough information to sua sponte order a competence hearing at sentencing? Because there's conflicting information, and it doesn't make sense. On the one hand, you have a person, as indicated in the psychological report and Flora's letter saying that this person's trying to fit in. This person's trying to not appear stupid. He doesn't want to appear stupid. He's not malingering. He's really trying hard to present himself as someone who understands what's going on. But the reality is, and the testing indicates, that this person doesn't have a level of understanding that's sufficient to plead guilty or understand exactly what's happening in this kind of case. And the extent to which he's able to have a business fixing cars, he wasn't able to do it by himself. And he wasn't able to work unless it was not alongside a family member. Counsel, what do we do with the district court's statement after listening to the recorded conversation? The court concludes we've been played. And that was an incorrect assessment because it was. Finding a fact that we have to declare is clearly erroneous in the face of what he was recording. You say that the whole transcript was. The whole transcript was screwed up. Yes. But that wasn't known to the judge. It was not. And if defense counsel. It's another counsel issue. Pardon me? It's another counsel issue. I'm sorry? Counsel issue. It's another counsel issue. Yes, yes, yes. There were mistakes. And we're here, thank goodness there's appellate review because there were so many mistakes and just want to get them fixed and to make sure. We have some time. Okay. Three seconds. We have time. Thank you. I'll be on mute. Please, the court. I am Christopher Brennan for the United States. As the court indicated, the defendant in this case pled guilty after he had been identified on more than one occasion engaged in significant drug trafficking as a member of the Mongols motorcycle gang. Specifically, and as described in his change of plea and at the change of plea hearing and the record and the case and the evidence before the court. And it concerns me some is that at the change of plea hearing, and I would suggest that this is somewhat influenced by what one later learns about his degree of understanding, but when they said to him, did you do this for the gang, he said, no, I did it for my friend. Right? And he had to have done it for the gang to get the gang enhancement or whatever it was. And he, and then they recited to him and he said, yes. But that's not very convincing evidence that he actually knew what he was agreeing to. Because it appears that his understanding and the way he explained it in his own words was he was doing it for his friend. Now, does that matter? It's not necessary that he himself, and there are legal standards that he can acknowledge what has been read and acknowledge the truth of that. Well, that's true, but then when you later learn that he doesn't understand a lot, leaving aside whether he's competent or incompetent, but that his level of understanding is not terrific. I don't think you have a situation in this case where the defendant has indicated he doesn't understand a lot. The court in this case, the district court, engaged in a lengthy change of plea colloquy. That's true, but it faltered at that point. But the court went on further at that point, and the court went through the elements and went through the questioning with the defendant specifically. And specifically culminating in, I'm looking at the record at page 79, where the court comes to the defendant and says, I need to hear that from you, Mr. Rivera. And the defendant answers, yes. And the court again asks, is that true? And the defendant answers, yes. What's the if? The colloquy, the information, and partly from his counsel, the question on the prior page from the court, well, I understand he didn't know at the time he was an undercover agent, but generally you knew the gang was involved in selling drugs. And his counsel states he knew the gang was involved in a variety of different activities, and that one of them, and the defense counsel, or the court then interjects and says, I need to hear it from you. And this is not a situation where there is a simple recitation followed by a yes. This went on at length, and the court engaged in an extensive quality inquiry on the factual basis and on the elements of the offense. Is the link that was important to supply there sufficiently supplied by the identification of the friend that he was supplying as the high-level official within the gang? Yes, Your Honor. This is, as the court indicated, this was an activity of the gang that he acknowledged he was participating in. And certainly in the transactions, the first transaction on February 12th, he was engaging in a drug transaction with the president of the San Bernardino chapter. There was also discussion that he Was that his friend? Or was it the undercover agent? It was a little unclear. I'm sorry. That person was a co-defendant in the case, not the undercover agent. The president of the chapter. Yes. That's the friend. Well, I suppose whether they were friends, they were co-conspirators. They were co- But it's the friend he was referring to. Oh, yes. I'm sorry. I didn't Were you doing that basically to assist the gang? No. I just did it for one friend, and that's it. Well, he did Was he a gang member? Yes. He did acknowledge that he had done this, and the factual basis is that he had done this on multiple occasions as a member and an associate of the Mongols gang. And he is conducting transactions with other Mongols members. And the evidence in this case, and his defense counsel acknowledged the evidence in this case was overwhelming. When the court gets to a standard of whether there was even, I mean, there's the Rule 11 colloquy, which in this case was substantial. But whether there's any indication as to whether the defendant would have done something different under a different colloquy, and the court should look to the nature of the evidence here. And as defense counsel acknowledged at the change of plea hearing, and I think the court referred to this at page 48 in the excerpts of record, the defendant has no defense. He stated that his client had acknowledged even to government counsel his culpability in the offense that left him with no defense. But we don't have any, I'm sorry, counsel, I didn't mean to interrupt. Do we have any more detailed information in the record about what it is that the defendant had told government counsel about his own understanding of what he had done that exposed him to such a lengthy sentence? Well, the court, I think in this case what you do have is an extensive record at a lot of points in the proceedings. You have the change of plea hearing. You also have two different sentencing, or two sentencing hearings, and you have those statements. You have the submissions of the reports that the government submitted, which detail his conduct, which supported the offense. Defense counsel's statement at page 48 in the record is that, and I think the court referred to this before, where defense counsel stated he is not incompetent, he is not insane, I don't have a defense in this case. He has made statements to the prosecutor that clearly implicate his knowledge of what was going on. And those are, again, when you get to a Rule 11 inquiry, and the second standard which, frankly, the appeal kind of tries to fine step around, is whether the court should conclude the defendant would have done something different. And in this case, the evidence is, frankly, overwhelming. In the second transaction, he was driving a trail car. He was, the role of a person in that type of transaction is to be on the lookout for law enforcement, which the discussion in the recording was that he was surprised that law enforcement showed up, didn't see them coming. Regardless of whether or not you want to consider that transcript or defense counsel's or appellate counsel's argument about that transcript, the fact is he's playing a role in a transaction which is relatively sophisticated. As the court also acknowledged at the sentencing, this is a large quantity of methamphetamine. It's not consistent with somebody's first experience in a drug transaction that they are moving a large quantity of drugs. There was also reports that the defendant had told an undercover that he had had $50,000 in drug proceeds stolen from his home and other drugs stolen from his home. This does not appear to be, and I think the court at sentencing wisely saw into the idea, that this wasn't this defendant's first rodeo. And far from being incompetent, he knew what he was doing and was engaged as, reflected as someone who had been committing similar offenses. I assume that the competence concern here was not competence as to the offense. It was competence as to the ability to make a knowing waiver, i.e., to participate in the plea agreement, which could be a different concept. I mean, his problems were cognitive, in other words. It certainly could be, but the court is entitled to look at the entire record and whether we're talking about what the judge was able to observe at the two sentencing hearings or whether what a different district court judge, because there were two in this case, was able to observe at the change of plea colloquy. The evidence of the defendant's conduct, his role in the transaction, would certainly go to whether or not there was ever any indication of any type of anything that the court should look to to determine whether there is substantial evidence of incompetence. Specifically, I think- One last question, and then you're out of time. If suppose the judge did have, the sentencing judge did have evidence, suppose the psychology report had been more definitive than you think it is and there was evidence before the sentencing judge, therefore, which would have triggered an inquiry, where does that leave the plea, which was before that evidence came in? First of all, I have to say that that would not be this case. I already said that. That's why you ask hypothetical questions. Go ahead. Well, I don't know what it would do to the plea. Is there any case law about that? In other words, at what point, if there wasn't any evidence before the judge at the time of the plea that would have triggered an inquiry, but there was, and I know that it's a different judge, but there was at the time of the sentencing, assume that were the case. Yes. I don't know. And the lawyer doesn't want this undone, clearly doesn't. No. So in terms of the lawyer is not asking to undo the plea. And the lawyer in the case at every turn said that this is not that case. So it's hard for me to construct something that just simply isn't there. You don't know any case law on that or anything? I don't. Okay. Thank you very much. Thank you. I'll try to be brief. I just want to point out a couple other statements that defense counsel did make to the court. Even though he did keep affirming that Mr. Rivera is competent, he did say, I was real concerned about his competency because I couldn't get through to him. You know, he is borderline retarded. Also, I'm troubled by the fact that he's clearly disabled. He is clearly intellectually disabled. He doesn't think things through. I couldn't understand why things were taking so long. And so I asked Dr. Fromming to have him evaluated. I explained three times how I would address the court and the issues that I would be raising. And I repeated three times. And then he asked me to write it down so he could understand it because he said he had already forgotten. Counselor, can I ask you a question? Because I read the same thing that you pointed to. But if after going through all of that, defense counsel looks at the judge and says, he's competent, he's not insane, I have concerns about how he will handle himself in prison, but he's competent, is the judge not entitled to look at defense counsel who's obviously been careful or at least appears to have been careful and say, and at least give some credit to that? In an ideal world, you would hope that you would be able to rely on defense counsel. That's what they're for. But wasn't counsel's concern that he had a vulnerable defendant? His concern was what's going to happen to my client after he is put into the shark tank with the rest of the people in the general prison population? I think that was the thrust of the concern that he was presenting to the court. But I think also counsel had anxiety that he repeatedly stated to the court over and over because I think that he realized after he actually read the psychological report from Dr. Fromming, he realized that, hey, I probably have someone who might be incompetent, but I didn't move for incompetency, so I'm going to just affirm that he's competent, but I have concerns about his mental instability. Well, that's one possibility. The other possibility is that he thought that the best thing for his client was to deal with it, gotten him, and he really wanted it undone. It is possible, but the buck stops with the district court, and the district court had evidence before it that gave the district court an articulated, reasonable concern that this person didn't have the wherewithal to understand what he was doing when he was pleading guilty. This, this is the indictment. Virtually all of the volume three of excerpts of record. And Mr. Rivera is someone who could not label a triangle as a rectangle or a rectangle as a triangle in the psychological report. That is not a person who would have been able to have the mental capacity to understand the rights that he was giving up or the reasonable alternatives. Therefore, what? Therefore, what should have happened? Let's suppose everything had played out the way you think it should have played out. Then what? Then at the sentencing hearing, what should have happened? The district court. Okay. And suppose you have this hearing. Suppose they decide he's incompetent. And then what? Not cognitively competent. And then what? If they had stopped the proceedings. Which is pretty unusual. I mean, there are certainly a fair number of people with his intellectual profile who are. I know. I know. It happens routinely where you have. Well, it's a low bar. It's, yes. You may not like how low the bar is, but it's a low bar. However, to be competent to stand trial is different than competent to plead guilty. It's a much more exacting standard to have someone understand the choices that they are making when they are pleading guilty. I thought the law was actually otherwise. Pardon me? I thought the case law is actually otherwise. It's the same. It's actually the same. It's not. It's more exacting to plead guilty than it is just to stand trial. It's still not exactly exacting. But he didn't have it. And it should have been tested. Thank you, Your Honor. Okay.
judges: Rosenthal, Berzon, Tallman